JAMES CHRISTENSEN, SR., Adm'r of the Estate of Mark B. Christensen, Deceased, Plaintiff-Appellant, v. THE CITY OF BLOOMINGTON *et al.*, Defendants (James Rogers *et al.*, Defendants-Appellees).

Fourth District   No. 4—86—0146

Opinion filed September 15, 1986.

Mike McElvain, of Law Office of Mike McElvain, of Bloomington, for appellant.

J. Mark McKinzie, of Costigan & Wollrab, P.C., of Bloomington, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On June 11, 1984, plaintiff, James Christensen, Sr., as the administrator of the estate of Mark B. Christensen, deceased, filed suit in the circuit court of McLean County against the city of Bloomington (city) and the county of McLean (county). He sought monetary damages for the alleged negligence which caused the wrongful death of the deceased and for the pain and suffering the deceased experienced at the time of the occurrence. By subsequent amendments, the Board

of Regents of the Regency Universities System of the State of Illinois (Board), James Rogers, Scott Tysen, Lerinda Saint, and Frank R. Bush were added as additional defendants. The latter defendants moved to dismiss the complaint as to them on grounds of governmental immunity.

On October 8, 1985, the court dismissed the complaint as to the Board and on December 15, 1985, the court dismissed the complaint as to the individual defendants. On February 25, 1986, the court found there was no just reason for delaying enforcement or appeal of the December 15, 1985, order. Plaintiff has appealed. We affirm.

The complaint alleges that on May 30, 1983: (1) the city owned a body of water and surrounding land and leased these properties to the county; (2) the county had entered into a contractual agreement with Illinois State University (University), an institution operated by the Board, for a boat-rental concession to be operated by the University; (3) defendant Rogers headed the department of the University assigned to operate the concession; (4) defendant Tysen was the supervisor in charge of the concession; (5) defendants Saint and Bush were students employed to operate the rental concession; (6) the deceased rented a canoe from the concession at a time of high winds; (7) while the deceased was paddling the canoe, it capsized, and he was killed; and (8) the negligence of each of the foregoing defendants was a proximate cause of the death of the deceased and his pain and suffering experienced after the canoe capsized and before his death.

The order of dismissal entered December 15, 1985, from which appeal is taken, was applicable only to the individual defendants, all of whom were employees of the Board. In *Robb v. Sutton* (1986), 147 Ill. App. 3d 708, this court ruled upon the question of application of the governmental-immunity doctrine to suits against governmental employees for alleged torts committed in the course of their employment. The opinion noted that the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, sec. 4) abolished governmental immunity except as the legislature might subsequently provide and that acting pursuant thereto the legislature passed certain legislation restoring that immunity. One such piece of legislation prohibited making the State a defendant in any of the constitutional courts of the State and relegated such a proceeding to a tribunal known as the Court of Claims. (Ill. Rev. Stat. 1983, ch. 127, par. 801.) Actions against such State entities as the defendant Board have been held to be actions against the State and subject to the foregoing prohibition. *Ellis v. Board of Governors of State Colleges & Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202.

Here, as in *Robb*, we are concerned with immunity that is possessed by officers and employees of entities which are considered to be the State for purposes of immunity. There, this court discussed the application of the immunity doctrine to various types of suits. We need not repeat that discussion here. However, because some of the individual defendants are alleged to hold somewhat menial positions, we deem it desirable to discuss in greater detail the application of the immunity of officers and employees to suits for monetary damages for torts. As explained there, under some circumstances, employees of entities with State immunity are personally liable for torts they commit in the course of their employment, and under other circumstances they have immunity.

In arguing that the situation here does not give rise to immunity for the individual defendants, plaintiff relies, as did the plaintiff in *Robb*, upon the case of *Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131, and the subsequent cases of *Gocheff v. State Community College* (1979), 69 Ill. App. 3d 178, 386 N.E.2d 1141, and *Watson v. St. Annes Hospital* (1979), 68 Ill. App. 3d 1048, 386 N.E.2d 885. *Madden* and *Watson* concern malpractice suits against physicians employed by State hospitals. Immunity was denied on the basis that the duties alleged to be breached were those which all physicians owe to their patients and not duties arising because they held a State position. The *Madden* court noted that the suit could not be said to control the operation of the State and would not subject the State to liability, because any judgment would be paid by the then-deceased physician's estate or his liability carrier. The *Madden* court also held that public official's immunity was not applicable because the physician's conduct giving rise to the malpractice claim was ministerial rather than discretionary. In *Gocheff*, citing *Madden*, the court held that a State employee driving a State vehicle in the course of his employment was not immune from liability for negligent driving, because his duty of care was that which all drivers owe to the public.

We conclude that the question of whether the conduct attributed to the individual defendants was discretionary or ministerial is dispositive here. In deciding that question in *Madden*, the court quoted from Prosser (Prosser, Torts sec. 132, at 988 (4th ed. 1971)), that the distinction between the two types of acts is " 'finespun and more or less unworkable.' " (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 1001, 372 N.E.2d 1131, 1134). The court concluded that the skill and judgment required to perform an act was not, of itself, sufficient to determine whether the act was discretionary or ministerial. Rather, the question was whether the act was of a governmental nature. The

court cited *Mora v. State* (1977), 68 Ill. 2d 223, 369 N.E.2d 868, and *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 246 N.E.2d 24.

In *Mora*, a district superintendent of the Illinois Department of Transportation was held to be immune from tort liability for negligence that might have occurred as a result of his failure to conduct a survey to determine whether a no-passing zone should have been established for a stretch of highway where construction work was taking place. Similarly, in *Lusietto*, a maintenance supervisor for certain of the highways within a district was held to be immune from liability for failure to take action to have a dangerous hole in a highway repaired even if he knew or should have known of the defect. The decision as to whether to repair was determined to be discretionary in nature.

Here, the amended complaint alleged that the individual defendants were negligent, because they "committed or omitted" one or more of the following acts:

"(a) Permitted the leasing, rental or usage of a water craft when wind speeds were excessive for safe operation.

(b) Permitted the leasing or rental of water crafts or canoes without any consideration of the expertise of the individual renting the canoe.

(c) Leased boats and canoes that were not seaworthy in high wind conditions during times of high wind.

(d) Permitted the boat rental concession to be operated by individuals whose training was insufficient for the standard necessary to properly operate a safe boat rental concession."

The conduct attributed to the individual defendants sounds very much like that attributed to the immune employees in *Mora* and *Lusietto*. Matters of discretion were involved and, as in *Robb*, any duties that they had arose from their employment with the State. Except as to customers of the University using the facilities, defendants had no duty to give advice as to whether boating was safe, the users were sufficiently experienced, the craft was seaworthy under the circumstances, or whether others operating the concession were competent. The only difference between the situation of the employees in this case and in *Mora, Robb* and *Lusietto* is that defendants Saint and Bush were alleged to be low-echelon employees.

The *Madden* opinion quoted Prosser which recognized the difficulty in the determination of whether acts were discretionary or ministerial. The current version of that text expresses similar difficulty and indicates that actual determination of that question often becomes a "policy decision." (Prosser & Keaton, Torts sec. 132, at 1062 (5th

ed. 1984).) Distinguishing the discretionary nature of the conduct alleged here, particularly that of Saint and Bush, from that of a physician in a State hospital is difficult. The *Madden* opinion indicated that holding State hospital physicians to the same degree of care that they owed other patients was not "unduly burdensome." (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 1002, 372 N.E.2d 1131, 1135.) That was a policy decision.

Thus, except to the extent of limited liability through the Court of Claims, the University is immune from suit arising from this occurrence. Rogers and Tysen hold positions similar to those of persons held immune in *Mora, Robb,* and *Lusietto* and are immune from liability here. An application of the State-immunity doctrine and the related rules concerning public officials' immunity which would push the major financial responsibility for the occurrence here, if the allegations of the complaint are true, on Saint and Bush would be "unduly burdensome."

When low-echelon decisions by State employees, such as those allegedly made by Saint and Bush here, concern duties which arise solely from their governmental service, public policy requires that they be granted immunity from liability for negligent acts of commission or omission. The trial court properly concluded that they had that immunity here.

As recited in *Robb*, many cases have held that State employees may not be sued if judgment would subject the State to liability. The individual defendants here contend that judgment against them would likely subject the State to monetary liability. They rely on the following unique theory. Any judgment obtained against them here could be introduced in evidence in any suit brought by plaintiff in the Court of Claims and would collaterally estop the State from denying that its servants, the individual defendants, were negligent. As we have held that all individual defendants have immunity, we need not pass upon the foregoing theory. However, we must point out that if this theory were followed, all State employees would have immunity for all negligent conduct committed in the course of their employment, because a finding of their guilt would always estop the State from denying negligence in a Court of Claims action brought under a theory of *respondeat superior*.

As previously indicated, we affirm for the reasons stated.

Affirmed.

McCULLOUGH, P.J., and WEBBER, J., concur.