**Thomas J. SMITH, Plaintiff,**

v.

**UNITED STATES of America, J. Thomas Johnson, Kevin Houlihan, William Smith, and Richard Dunn, Defendants.**

**No. 87–3162.**

United States District Court, C.D. Illinois, Springfield Division.

Oct. 27, 1989.

Wayne R. Golomb, Springfield, Ill., for plaintiff.

James A. Lewis, Asst. U.S. Atty., Charles S. Watson, Asst. Atty. Gen., Springfield, Ill., David C. Hickman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION

RICHARD MILLS, District Judge:

This scenario could be entitled "The Fox Guarding the Hen House," and is the corollary to a unique case which we decided a few months ago.

This case and its companion involve the disclosure of tax return information by an Internal Revenue Service (IRS) official to an Illinois Department of Revenue (IDR) official. The taxpayer whose return was the subject of the disclosure was at that time a high ranking official in the IDR who was discharged because of his failure to file a return and pay his taxes.

This matter is before the Court on Defendants' motions for summary judgment.

### I—Facts

At all relevant times, Ira Loeb was the District Director for the Springfield District of the IRS. As district director, he was the federal official primarily respon-sible for the administration of the federal tax laws in this district. Plaintiff, Thomas Smith, was employed by the IDR and acted as the liaison official for the federal-state exchange program (program). The program facilitates the exchange of confidential tax information between the IRS and the IDR. As the liaison official, Smith was the contact point between the IRS and the IDR. J. Thomas Johnson was Director of the Illinois Department of Revenue and Kevin Houlihan was an Executive Deputy Director. William Smith was the Deputy Director of Audit and Collections, and Richard Dunn was Inspector in Charge of the Investigation Division.

In mid-October of 1984, information regarding Thomas Smith's tax delinquencies was brought to the attention of Mr. Loeb. Subsequently, Mr. Loeb received a memorandum from Eugene Winston, Chief of the Collection Division for the district, dated October 29, 1984. This memorandum stated that Mr. Smith had not filed a federal tax return for the years 1982 and 1983 and that he had outstanding tax liabilities for the years 1980 and 1981. Upon receiving this information, Mr. Loeb determined that it indicated a potential state tax violation by Mr. Smith and that this delinquency reflected poorly on Mr. Smith's ability to carry out his liaison responsibilities. Mr. Loeb decided that the IRS should request that Mr. Smith be relieved of his position as the liaison official.

To accomplish his goal, Mr. Loeb determined that the director of the Illinois Department of Revenue should be contacted directly. Mr. Loeb initiated this direct contact because the official who he would normally have contacted regarding the disclosure of confidential tax information was Mr. Smith, the very individual whose tax information was involved! Cognizant of the strict disclosure laws, Mr. Loeb consulted IRS counsel for an opinion regarding the propriety of disclosing the information. It was determined by counsel that the disclosure could be made lawfully under the Internal Revenue Code. 26 U.S.C. § 6103(d). Counsel further advised Mr. Loeb on the implications of disclosure in

light of *Rueckert v. Gore*, 587 F.Supp. 1238 (N.D.Ill.1984), *aff'd*, 775 F.2d 208 (7th Cir. 1985), which involved disclosures of federal tax return information to the Illinois Department of Revenue. After receiving clearance from counsel, Mr. Loeb personally provided Mr. Johnson, the Director of the IDR, with the Winston memorandum and requested that Mr. Smith be relieved of his liaison responsibilities.

Mr. Loeb discovered that he had made a mistake in disclosing this information when this Court—in a prior opinion in a related case, *Smith v. United States*, 703 F.Supp. 1344 (C.D.Ill.1989)—granted summary judgment in favor of Mr. Smith. Following disclosure of the Winston memorandum, the IDR conducted an investigation into Mr. Smith's tax filings. This investigation included requesting further information from the IRS.

Shortly before noon on December 7, 1984, Mr. Smith was advised by William Smith (no relation) that he would be required to attend a 1:00 p.m. meeting concerning his discharge from the IDR. Mr. Smith was further advised that he should have an attorney present. Present at this meeting were William Cline and William Smith representing the IDR and Mr. Smith represented by his counsel. Taking the affidavits submitted by William Cline and Plaintiff together, it is undisputed that a meeting was held by representatives of the Illinois Department of Revenue and Mr. Smith and his attorney. At this meeting, the approved charges were read (and given) to Mr. Smith and he was asked to respond to them. Mr. Smith, represented by counsel, responded that his attorney advised him not to file the returns because of his pending divorce action. Mr. Smith was then suspended from the IDR pending discharge for failure to properly file his tax returns.

Mr. Smith appealed his discharge to the Illinois Civil Service Commission. The Commission reversed the IDR's decision to terminate Mr. Smith and imposed a 120 day suspension. The Commission believed that a suspension was more appropriate based upon past Commission precedent, the cir-cuit court's ruling in a similar case, and the IDR's action with respect to another employee who also had failed to properly file tax returns. The Commission's decision was subsequently affirmed by the Illinois Appellate Court. *See Department of Revenue v. Smith*, 150 Ill.App.3d 1039, 103 Ill.Dec. 832, 501 N.E.2d 1370 (4th Dist. 1986).

Following the Commission's decision, Mr. Smith was returned to the payroll of the IDR; however, he was not permitted to return to work and was placed on leave. In April of 1986 when Mr. Smith came up for reappointment pursuant to the Illinois Personnel Code, he was not reappointed and was discharged from his position with the IDR. *See* Ill.Rev.Stat. ch. 127, ¶ 63b108b.18.

Mr. Smith subsequently brought suit against the United States for the unauthorized disclosure of the tax return information. As previously mentioned, Mr. Smith was granted summary judgment concerning liability and this Court presently has pending the damages issue. In the instant case, Mr. Smith has brought suit in a ten count complaint against Ira Loeb and officials of the IDR. Mr. Smith requests $6 million for his troubles and believes that each of these individuals should chip in.

## II—Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary

question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).. Applying this standard, the Court now turns to the case at bar.

### III—State Law Claims

Counts I–IV of Plaintiff's second amended complaint allege pendent state law claims. Counts I–II were initially brought against Ira Loeb individually. Counts III–IV have been brought against Ira Loeb, as well as J. Thomas Johnson, Kevin Houlihan, William Smith, and Richard Dunn (state defendants). Pursuant to the Federal Torts Claims Act, the United States was substituted as a defendant for Ira Loeb. *See* 28 U.S.C. § 2679(d)(1).

Counts I–II allege that Ira Loeb disclosed confidential taxpayer return information in violation of 26 U.S.C. § 6103 and that as a result of this disclosure Plaintiff was discharged from his employment and has lost "substantial income, benefits, and gains ... and has suffered severe emotional and physical damage and damages to his reputation." The Internal Revenue Code specifically provides for suit against the United States by a taxpayer when an employee of the United States knowingly or negligently discloses any information in violation of § 6103. 26 U.S.C. § 7431(a)(1). This section provides that the taxpayer can recover the greater of $1,000 for each unauthorized disclosure, or the taxpayer's actual damages, punitive damages if the disclosure was wilful, and the costs of the action. *Id.* § 7431(c).

▮ The Internal Revenue Code clearly provides that an action for disclosure of confidential tax information by a federal employee is to be brought against the United States itself and not the employee. Pursuant to the Federal Torts Claims Act, the United States Attorney General, through his authorized representative, certified that Ira Loeb was acting within the scope of his authority when he made the illegal disclosure. Therefore, the United States was substituted as a defendant for Ira Loeb in this action.

Counts I–II of Plaintiff's second amended complaint are therefore identical to what Plaintiff has pled in the related case of *Smith v. United States,* 703 F.Supp. 1344 (C.D.Ill.1989). We find that it would be a waste of judicial resources to allow two separate actions to proceed between the same parties and seeking the same damages. Therefore, we will dismiss Counts I–II of Plaintiff's second amended complaint in this action. The dismissal is without prejudice and is by no means a ruling on the merits of Plaintiff's claim against the United States.

Counts III–IV are also pendent state law claims against the United States and the state defendants. Count III alleges that the "defendants ... knowing that use of taxpayer information acquired by them was illegal, conspired and agreed ... to discharge plaintiff based on plaintiff's failure to timely file his state income tax returns...." Furthermore, Plaintiff alleges that "defendants had a duty to refrain from negligently using tax or taxpayer information contrary to law." Count IV alleges that the same conduct on the part of Defendants was wilful.

To the extent that the United States is a Defendant in Counts III–IV, our foregoing reasoning would be equally applicable to these counts. Any recovery that Plaintiff could obtain from the United States pursuant to these counts would be duplicative of what he may obtain in the related case.

The state Defendants have moved to dismiss or in the alternative for summary judgment on Counts III–IV. The Defendants argue that the Plaintiff's complaint apparently attempts to state a cause of action for "conspiratorial negligence." Plaintiff's complaint can be read in either of two ways. First, Plaintiff could be alleging that the Defendants negligently used the tax information they received from Ira Loeb. Second, the complaint also could be read as alleging that the state

Defendants conspired to use the information to discharge Plaintiff in an attempt to cover up the illegal disclosure of Mr. Loeb. In his response to Defendants' motion, Plaintiff states that his "theory is that the Defendants, by violating laws that impose privacy restrictions on tax information violated a duty imposed by those laws, proximately causing damage to Plaintiff." In support of this theory, Plaintiff cites the privacy sections of the Illinois Constitution, the Internal Revenue Code, the Illinois Revenue Code, and the Illinois Personnel Code.

■ Accepting everything the Plaintiff has alleged in his complaint as true, and considering all supporting evidence in the light most favorable to Plaintiff, we find that Plaintiff has failed to state a cause of action against the state Defendants. Plaintiff concedes that he is not arguing that the state Defendants violated section 6103. The violation of this statute was by Ira Loeb. Defendants' counsel has represented to this Court that a diligent search of the case law has revealed nothing indicating a common law duty to refrain from using taxpayer information. The Plaintiff's response has also failed to cite any authority imposing such a duty. The gravamen of Plaintiff's complaint is that, relying on this illegally disclosed information and information revealed by an independent investigation, the state Defendants discharged Plaintiff from his position with the IDR. Plaintiff contends that this discharge was illegal. However, whatever the merits of Plaintiff's argument of an illegal discharge, he has failed to state a cause of action in Counts III–IV concerning the "conspiratorial negligence" of the state Defendants in using the information disclosed by Mr. Loeb. The state defendants also argue that Plaintiff's suit must be dismissed because of the doctrine of sovereign immunity. Although the Illinois Constitution of 1970 abolished sovereign immunity, it also permitted the General Assembly to restore it. Ill. Const. of 1970, art. XIII, § 4. The General Assembly subsequently restored sovereign immunity and provided that "[e]xcept as provided in [an act] to create the Court of Claims ... the state of Illinois shall not be made a defendant or party in any court." Ill.Rev.Stat. ch. 127, ¶ 801. The exceptions enumerated in the act creating the Court of Claims are inapplicable to this case. *See* Ill.Rev.Stat. ch. 37, ¶ 439.8.

■ In Counts III–IV Plaintiff states that he is bringing the action against the state defendants individually; however, he then proceeds to name them in their official capacities. The Illinois Supreme Court has repeatedly recognized that "[t]he immunity of the state is not determined by the formal designation of the parties, but rather by the issues involved and the relief sought." *Smith v. Jones,* 113 Ill.2d 126, 100 Ill.Dec. 560, 497 N.E.2d 738 (1986); *Herget Nat'l Bank v. Kenney,* 105 Ill.2d 405, 86 Ill.Dec. 484, 475 N.E.2d 863 (1985); *Sass v. Kramer,* 72 Ill.2d 485, 21 Ill.Dec. 528, 381 N.E.2d 975 (1978). The "official acts of state officers are in effect acts of the state itself." *Sass,* 72 Ill.2d at 492, 21 Ill.Dec. 532, 381 N.E.2d at 979. An action against a state official for conduct in his official capacity may avoid the bar of the doctrine of sovereign immunity if the complaint alleges and the plaintiff can prove that the official enforced an unconstitutional law or violated a law of Illinois and thus acted beyond his authority. *Kenney,* 105 Ill.2d at 411, 86 Ill.Dec. 484, 475 N.E.2d at 866.

■ Plaintiff attempts to circumvent the bar of sovereign immunity by alleging in Count IV that the state officials acted illegally and maliciously. However, Plaintiff has failed to present any evidence that the acts of the officials in terminating Plaintiff for failure to file a tax return were outside the scope of their authority or illegal under the law of Illinois. Stripping away the chaff of Plaintiff's case, we are left with allegations that a federal official illegally disclosed tax information to state officials who then used that true information to discharge Plaintiff. We believe that the state officials were acting within their official capacities when they discharged Plaintiff. Furthermore, the State of Illinois has a strong interest in insuring that employ-

ees of its Department of Revenue comply with the tax laws.

■ In his response to Defendants' motion for summary judgment, Plaintiff asserts that the state has waived the defense of sovereign immunity in this case. In support of this assertion, Plaintiff makes a convoluted argument that by accepting tax information from the federal government, the State of Illinois has impliedly agreed that its use of that information will be in accordance with federal law. The Plaintiff then concludes that because state officials became responsible for adhering to federal law, the state has waived its immunity from suit for misuse of tax information. In effect, Plaintiff argues that acceptance of the federal benefits constitutes the knowing waiver of the doctrine of sovereign immunity. In support of this argument, Plaintiff cites *Benson v. Allphin*, 786 F.2d 268 (7th Cir.1986).

*Benson* provides meager support for this argument. The brief discussion of sovereign immunity in the *Benson* opinion merely states that a state statute allowing indemnification of state officials is insufficient to bring the eleventh amendment into play. Plaintiff has failed to cite any specific state statute wherein the General Assembly has specifically waived the doctrine of sovereign immunity in this situation. In the absence of such a specific waiver, we will not presume that the state waives its right to claim the bar of sovereign immunity. Therefore, as an additional ground for granting summary judgment to the state defendants, we find that to the extent the state defendants have been sued in their official capacities the doctrine of sovereign immunity bars Plaintiff's claim for damages for misuse of the tax information provided by the federal government.

■ Immunity for the state defendants in this case is also supported by the common law doctrine of "public official immunity." Under this doctrine, the officials are immune from personal liability for the performance of governmental duties. *See Christensen v. City of Bloomington*, 147 Ill.App.3d 702, 101 Ill.Dec. 77, 498 N.E.2d 259 (4th Dist.1986). The state defendants were clearly acting in a governmental role when they investigated Plaintiff's tax filings and discharged him for failing to file his state tax returns. Thus, they are immune from liability for negligent acts of commission or omission. Therefore, we will grant summary judgment to the state Defendants on Counts III–IV of Plaintiff's second amended complaint.

### IV—Section 1983 Claims Against Federal Agent

■ Counts V–VI of Plaintiff's second amended complaint purport to bring a cause of action pursuant to 42 U.S.C. § 1983 against Ira Loeb for the disclosure of the confidential tax information and Plaintiff's subsequent discharge from the Illinois Department of Revenue. Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia . . . ." Mr. Loeb was an agent of the federal government and was acting as such within the scope of his authority when he illegally disclosed the confidential tax information to the Illinois Department of Revenue. Therefore, Mr. Loeb was not acting under color of state law and thus an action pursuant to section 1983 will not lie against him individually. *See Stonecipher v. Bray*, 653 F.2d 398 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Anderson v. Luther*, 521 F.Supp. 91 (N.D.Ill.1981). Thus, Defendant Ira Loeb will be granted summary judgment on Counts V–VI of Plaintiff's second amended complaint.

■ Mr. Loeb is also named as a Defendant in Counts VII–VIII. These counts are also brought pursuant to 42 U.S.C. § 1983. However, in these counts it is alleged that Mr. Loeb conspired with the state actors to deprive Mr. Smith of his constitutional rights. When a non-state actor (which includes a federal agent) conspires with state officials to deprive an individual of his constitutional rights, an action under section 1983 will lie against that non-state actor. *See Wagenmann v. Adams*, 829 F.2d 196 (1st Cir.1987); *Telegraph Savings & Loan*

*Assoc. v. Federal Savings & Loan Ins. Corp.*, 564 F.Supp. 862 (N.D.Ill.1981).

■ Ira Loeb argues that the defense of qualified immunity should apply to Plaintiff's allegations that his constitutional and civil rights were violated. The principle of qualified immunity is based on the policy of protecting officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. *See Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1977) (federal officials); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (state officials).

The threshold an official must meet to invoke the defense of qualified immunity was set down in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1981). In *Harlow,* the Court stated:

> We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. In the case at bar, the statutory and constitutional rights which Defendants allegedly violated were clearly established and a reasonable person would have known of them. Our prior opinion in the related case of *Smith v. United States,* 703 F.Supp. 1344 (C.D.Ill. 1989), adequately discusses Defendant Loeb's duties under 26 U.S.C. § 6103 and why he should have realized that his disclosure would violate that statute.

■ Concerning Plaintiff's alleged unconstitutional discharge, a public employee's right to a hearing prior to discharge was clearly established at the time Plaintiff was terminated in January of 1985. *See Davis v. Scherer,* 468 U.S. 183, 192 n. 10, 104 S.Ct. 3012, 3018 n. 10, 82 L.Ed.2d 139 (1984) ("the decisions of this Court by 1978 had required 'some kind of hearing,' prior to discharge of an employee who had a constitutionally protected property interest in his employment."); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47

L.Ed.2d 18 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Thus, the Defendants are not entitled to rely on a defense of qualified immunity in this case.

### V—January 1985 Discharge

■ The United States Supreme Court has clearly held that a public employee may have a property right in his job. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff had last been reappointed to his position with the Illinois Department of Revenue in 1982 pursuant to the State Personnel Code's term appointment statute. *See* Ill.Rev. Stat. ch. 127, ¶ 63b108b.18. In defining what is a property interest, the United States Supreme Court has clearly stated that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Therefore, we find that Plaintiff had a property interest in his job with the Illinois Department of Revenue during his termination in January of 1985.

The United States Constitution provides that a property interest such as this can only be taken away by the state in conformity with procedural due process. U.S. Const., amend. XIV. The gist of Plaintiff's complaint concerning his discharge in January of 1985 is that he was not provided procedural due process.

The United States Supreme Court addressed the issue of what process is due an individual prior to removing that person from state employment in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Court stated:

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled

to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 (citations omitted). In addition, *Loudermill* relied on the state's provision for a full post-termination evidentiary hearing. *Id.* at 546–47, 105 S.Ct. at 1495–96.

■ Considering the affidavits of William Cline and Thomas Smith together, the following facts are undisputed: (1) a meeting was held by representatives of the Illinois Department of Revenue (William Smith and William Cline) and Tom Smith and his attorney; (2) at the meeting the approved charges were read (and given) to Plaintiff and he was asked to respond to them; (3) the Plaintiff responded that his attorney had advised him not to file his tax returns because of his pending divorce action. Thus, we find that Plaintiff was given notice of the reasons for suspending him pending discharge and was given an opportunity to respond. As was stated by the *Loudermill* court:

> the pre-termination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

*Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495–96. In the case at bar, we find that the IDR complied with the correct procedures at Plaintiff's pre-termination hearing. Therefore, he was not deprived of procedural due process. *See Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251 (7th Cir.1985).

■ The second essential requirement of procedural due process when addressing the discharge of a public employee is a prompt post-discharge evidentiary hearing. In this case, Plaintiff received such a hearing before the Illinois Civil Service Commission. Indeed, the Commission reversed the decision of the IDR to discharge Mr. Smith and placed him on a 120 day suspension. Therefore, Plaintiff received all the process that he was due under the United States Constitution and thus Defendants' motion for summary judgment will be granted as to Counts VII–VIII.

## VI—April 1986 Discharge

In Counts IX–X of Plaintiff's complaint he alleges that the state Defendants deprived him of his employment in violation of his constitutional right of due process when he was not reappointed to his position. There is no possibility of arguing in these counts that Plaintiff was provided procedural due process. Plaintiff was not accorded any type of hearing at this time. The Personnel Code specifically provides that failure to renew the term of an employee is not grievable or appealable to the Civil Service Commission. Ill.Rev.Stat. ch. 127, ¶ 63b108b.18. Therefore, the question that we are presented with concerning the last two counts of Plaintiff's complaint is whether he had a property interest in his job when he was not reappointed. If Plaintiff did not have a property interest, then his rights were not violated and his claim must fail.

■ The term appointment statute specifically provides that "when a term expires, the director or chairman of the department, board or commission in which the position is located, shall terminate the incumbent or renew the term for another four year term." Ill.Rev.Stat. ch. 127, ¶ 63b108b.18. Thus, the statute clearly leaves to the unfettered discretion of the department head the choice to either terminate or reappoint the employee. The employee's only legitimate claim of entitlement is that during the four year term he will not be discharged except for cause. *See Endicott v. Huddleston,* 644 F.2d 1208, 1214 (7th Cir.1980).

■ In arguing against Defendants' motion for summary judgment, Plaintiff states that he had a liberty interest at stake and this interest was infringed by the Defendants. We note first that Plaintiff

did not plead a liberty claim in his complaint. Plaintiff's complaint is based on a property interest in his job. Furthermore, Plaintiff admitted not filing the tax returns which he was required to do. This was the reason for his discharge. We find that the state Defendants did not infringe Plaintiff's liberty interest by discharging him for violating the regulations of the IDR and the laws of Illinois.

Plaintiff next argues that he was hired prior to the enactment of the term appointment statute by the Illinois General Assembly. Thus, the Illinois General Assembly could not effectively deprive Plaintiff of his property interest in his job. This is clearly incorrect. A property interest is created by state law; therefore, it can also be removed by state law. While the state is not free to confer a property interest such as tenure on a public employee, and then arbitrarily discharge that employee in violation of that interest, a state is free to abolish the entire interest.

The decision in *Kizas v. Webster*, 707 F.2d 524 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), provides support for our position here. *Kizas* involved a decision by the Federal Bureau of Investigation (FBI) to alter the method it used in making appointments to the position of special agent. Clerical and support employees brought suit alleging that the change divested them of a valuable right in the nature of a property interest and that the divestment was done without due process. The circuit court rejected this argument and found that cases involving the deprivation of property without due process had no application to a situation such as that before it where the underlying source of entitlement was abolished. The court stated: "A 'legitimate claim of entitlement' to a government benefit does not transform the benefit itself into a vested right. Rather, due process 'property interests' in public benefits are limited, as a general rule, by the governmental power to remove, through prescribed procedures, the *underlying source of those benefits.*" *Kizas*, 707 F.2d at 539 (footnote omitted) (emphasis original) (citing *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980)).

Therefore, we find in the case at bar that Plaintiff was not deprived of a property interest when the Illinois General Assembly amended the Personnel Code and provided for term appointments consisting of four years. Thus, the decision of the IDR to not renew Plaintiff was not a deprivation of a property interest which would be protected by the United States Constitution. Defendants' motion for summary judgment will be granted as to the final two counts of the complaint.

## VII

*Ergo*, for the foregoing reasons, the United States is DISMISSED as a Defendant from this suit. Defendants' motions for summary judgment on Counts III through X are ALLOWED. Our disposition of the motions for summary judgment renders Defendants' motion for a protective order moot. Thus, it is DENIED AS MOOT.

Case CLOSED.