Arthur CATLETT, Plaintiff,

v.

Howard PETERS, III; John J. Barnett; Dr. Ugo Formigoni; Bessie Woodfin; Jearlean Cody; and Daniel R. Mumpher, Defendants.

No. 98 C 3273.

United States District Court,
N.D. Illinois,
Easter Division.

Sept. 19, 1998.

Allan R. Stasica, Amy S. Ratterree, Illinois Atty. General's Office, Chicago, IL, for Defendants.

Armand L. Andry, Law Offices of Armand L. Andry, Oak Park, IL, for Plaintiff.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Presently before us is defendants' motion to dismiss the complaint of plaintiff Arthur Catlett pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

### I. Background

According to his complaint, Catlett is a former employee of the Illinois Department of Mental Health and Developmental Disabilities, which is now part of the Illinois Department of Human Services (IDHS). He worked for that agency as a Mental Health Technician from May 16, 1989, through August 5, 1997, when he was discharged for selling cigarettes to patients at an IDHS facility. Catlett was a member of the American Federation of State, County, and Municipal Employees (AFSCME), and in 1995 became an executive board member of the union.

Catlett requested a post-termination hearing regarding the cause for his discharge and received the hearing through a "union grievance mechanism," where, on December 11, 1997, a number of IDHS patients testified that Catlett had sold them cigarettes. Catlett claims that these witnesses "suffered from varying degrees of psychological disorders necessitating their involuntary placement with IDHS." He alleges that he was not permitted to confront and cross-examine the IDHS patients, nor was he given access to other IDHS patients who could establish that he did not commit the offenses alleged. After the hearing, the presiding IDHS hearing officer denied Catlett's grievance. He filed suit in this Court under 42 U.S.C. § 1983, claiming that his hearing was conducted without due process of law in violation of the Fourteenth Amendment. He further claims that the procedural limitations were imposed on him because of his participation in union activity, in violation of the Equal Protection Clause of the Fourteenth Amendment.

### II. Discussion

#### A. Subject Matter Jurisdiction

Defendants first argue that this court lacks subject matter jurisdiction over Catlett's complaint. They argue that as officials and employees of IDHS, they are entitled to immunity under the Eleventh Amendment to the U.S. Constitution.

 Whether a state official is immune from suit in federal court under the Eleventh Amendment depends on whether the official is sued in his or her official or individual capacity. See Kroll v. Board of Trustees of Univ. of Illinois, 934 F.2d 904, 907–08 (7th Cir.1991). It is well-settled that the Eleventh Amendment bars a suit for damages against a state official in his or her official capacity, as that would amount to a suit against the state itself since any damages

recovered would be drawn directly from the state's treasury. *Id.* at 907. An individual capacity suit for damages is not barred because the plaintiff's recovery would come from the official's personal assets, not those of the state. *Id.* Catlett's complaint names all six defendants in both capacities. We therefore dismiss his claims for damages against the defendants in their official capacities. Catlett's claims for damages against the defendants in their individual capacities still stand.

■ Official capacity suits for injunctive relief—seeking "to enjoin as unconstitutional a state official's action"—also survive Eleventh Amendment scrutiny. *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Under the doctrine of *Ex Parte Young,* suits for injunctive relief against state officials are not precluded by the doctrine of sovereign immunity, even when the remedy will enjoin the implementation of an official state policy. *Ex Parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908). We therefore do not dismiss Catlett's § 1983 claims for injunctive relief against the six defendants.

■ Defendants also argue that they are immune from suit under the common law doctrine of "public official immunity." This doctrine is an affirmative defense only to state law claims, as the authorities they cite clearly indicate. *See Smith v. United States,* 723 F.Supp. 1300, 1306 (N.D.Ill.1989); *Christensen v. City of Bloomington,* 147 Ill.App.3d 702, 101 Ill.Dec. 77, 498 N.E.2d 259, 262 (Ill.App.Ct.1986).

### B. Failure to State a Claim Under § 1983

#### 1. Requisite Personal Involvement for § 1983 Liability

■ Defendants first argue that Catlett fails to state a claim under § 1983 because he does not allege that each defendant was directly and personally involved in the denial of his constitutional rights. "[P]ersonal involvement is a prerequisite for individual liability in a § 1983 action." *Gossmeyer v. Mc-*

*Donald,* 128 F.3d 481, 495 (7th Cir.1997) (citing *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983) (finding that "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation" since "[s]ection 1983 creates a cause of action based upon personal liability and predicated upon fault")). This personal responsibility requirement is satisfied where an official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at her direction or with her knowledge and consent." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (quoting *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982)).

Applying these standards to Catlett's claims against each individual defendant,[1] we begin with defendants Howard Peters III, the Director of IDHS, and John J. Barnett, the Chief of the Bureau of Labor Relations of IDHS. The plaintiff alleges that both of these individuals are "responsible for determining policy with respect to hearings concerning Labor Union grievances." Compl. ¶¶ 2, 3. Defendant Ugo Formigoni was an officer for IDHS whom the plaintiff claims approved his termination from state employment. Defendant Bessie Woodfin was the Director of Nursing at the IDHS facility at which Catlett worked. Catlett claims that Woodfin "submitted charges from patients to be used as the basis of Plaintiff's termination from State employment." Compl. ¶ 6. Defendant Jearlean Cody was a Nursing Supervisor for the IDHS facility. According to Catlett, Cody "allegedly collected statements from patients against Plaintiff to be used by the IDHS to support Plaintiff's termination from State employment." Compl. ¶ 7. Finally, defendant Daniel R. Mumpher was the IDHS hearing officer who heard and denied Catlett's grievance.

Catlett does not detail each defendant's involvement any more than this, but he does not need to at this stage of the litigation. We cannot dismiss his complaint "unless it is

---

1. We pause to observe the liberal standard for examining complaints challenged on a motion to dismiss: we take all of the well-pleaded factual allegations to be true, construe them in the light most favorable to the plaintiff, and draw all rea-

sonable inferences to the plaintiff's advantage. *See Lanigan v. Village of E. Hazel Crest,* 110 F.3d 467, 468 (7th Cir.1997); *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995).

impossible for him to prevail 'under any set of facts that could be proved consistent with the allegations.' " *Albiero v. City of Kankakee,* 122 F.3d 417 (7th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Certainly it is consistent with Catlett's allegations that each of the defendants played some role in the deprivation of his due process rights. Each defendant is alleged to have taken or to have known of actions that were causally connected to Catlett's discharge and the subsequent hearing at which he alleges he was denied the opportunity to cross-examine the state's witnesses and to present rebuttal witnesses.

■ Defendants also argue that under § 1983, liability of a supervisory official will not be imposed vicariously under a theory of *respondeat superior.* While this assertion is a correct statement of the law, *see, e.g., Gentry,* 65 F.3d at 561. Catlett has not alleged such a theory of liability here. Rather, he alleges that the supervisory officials named in his complaint either participated in or had knowledge of and failed to prevent his allegedly inadequate post-termination hearing. Since a claim that the defendant supervisors "kn[e]w about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye," *id.,* is consistent with Catlett's allegations, his complaint survives the motion to dismiss.

*2. Denial of Procedural Due Process Rights*

■ Defendants next argue that Catlett's allegations do not constitute a cause of action under the Due Process Clause because he "received all the protections to which he was entitled." Mot. to Dismiss at 5. To sustain a procedural due process claim, a plaintiff must show: (1) that he has a cognizable property interest; (2) that he was deprived of that property interest; and (3) that he was denied due process of law. *Buttitta v. City of Chicago,* 9 F.3d 1198, 1201 (7th

Cir.1993). The defendants contest only the third element, so it is to that issue we now turn: whether Catlett's union grievance hearing provided him with adequate process.

■ The Seventh Circuit routinely emphasizes that "due process is a flexible concept whose procedures depend on the particular circumstances of each case." *Id.* at 1206; *see also Wallace v. Tilley,* 41 F.3d 296, 300 (7th Cir.1994). "In general, due process requires notice of charges and an opportunity for a hearing appropriate to the nature and gravity of those charges." *Buttitta,* 9 F.3d at 1206. To determine whether a particular hearing satisfies the requirements of due process, we use the test articulated by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), balancing:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Under the *Mathews* balancing test, we give strong weight to Catlett's interest in his continued employment as a Mental Health Technician for IDHS. *See Domiano v. Village of River Grove,* 904 F.2d 1142, 1148 (7th Cir.1990) (noting the significance of an employee's interest in retaining his job, since "[e]ven if the employee lands another job, the search for employment consumes time and effort and is hindered by the questionable circumstances surrounding the employee's departure from his prior employment"). The nature of the only proof offered against Catlett, according to the complaint [2]—testimony from patients suffering from serious mental

---

2. We observe again that a complaint withstands a motion to dismiss if there is a claim for relief under any set of facts consistent with the plaintiff's allegations—that is, " 'unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' " *Gutierrez v. Peters,* 111 F.3d 1364, 1368 (7th Cir.1997) (quoting *Thomason v. Nachtrieb,* 888

F.2d 1202, 1204 (7th Cir.1989)). As long as none of Catlett's factual averments eliminate the possibility that he was denied due process of law, the complaint may not be dismissed on that ground, as it is "[o]nly later—via summary judgment or trial—[that] a court sift[s] the probable from the merely possible." *Nance v. Vieregge,* 147 F.3d 589, 590 (7th Cir.1998).

illnesses—makes clear that the limited procedures used, allowing Catlett no opportunity to cross-examine or to call rebuttal witnesses, posed a significant risk of erroneously depriving him of this interest. The value of additional procedural safeguards in reducing this risk—such as allowing Catlett to challenge the witnesses' credibility and veracity by confronting them or by calling others to testify—is substantial. Finally, while IDHS has an interest in the efficient resolution of discharge disputes, we do not think that these additional procedural safeguards are likely to significantly burden the agency. Rather, affording Catlett the right to cross-examine the witnesses presented and to put on a few witnesses of his own would merely lengthen the hearing somewhat. Facts not in the complaint may change this analysis, but it is consistent with the allegations of the complaint that Catlett's due process rights were violated.

While defendants also seem to suggest that Catlett waived his due process claim since he could choose between a regular hearing (with full process) and a union hearing (with lesser process), this argument relies on facts not presented in the complaint, which we do not consider on a motion to dismiss. See FED.R.CIV.P. 12(b). For now, we simply take as true the factual allegations in Catlett's complaint, so all we know is that the hearing he was given allegedly violated his rights under the Due Process Clause. Discovery may show, as the defendants contend, that Catlett had a chance to avail himself of an alternative procedure through which he would have received a more substantial hearing, including the opportunity to confront adverse witnesses and to present his own witnesses. If so, Catlett may have waived any right to make a due process claim,[3] and the defendants would be entitled to summary judgment—a determination that we cannot make at this time given the posture of the case.

### 3. Equal Protection Claim

■ Finally, defendants argue that Catlett's complaint fails to state a claim under the Equal Protection Clause of the Fourteenth Amendment. They suggest that he is not entitled to any process in excess of that provided under "standard union procedures," that he has no claim because the remedy he got is the same one "afforded all other employees in his position" and that now he merely "seeks additional rights not afforded others." Mot. to Dismiss at 5.

■ To state a claim for an equal protection violation, a plaintiff must allege that defendants purposefully discriminated against him because of his membership in a particular class and that similarly-situated persons outside of the class were treated differently in similar situations. See Sims v. Mulcahy, 902 F.2d 524, 538–39 (7th Cir. 1990). Catlett explicitly charges in his complaint that the actions alleged, depriving him of a fair hearing, "were taken by Defendants because of Plaintiff's participation in Union activity." Compl. ¶ 31. Since participation in union activity does not render one a member of a suspect class, Catlett will have the burden of proving that the classification made is not rationally related to a legitimate state interest. See City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439–442, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Catlett's complaint describes only the procedure given him and the fact that he is a union member, and it is consistent with those allegations that non-union employees are treated better for no rational reason. We therefore cannot dismiss his equal protection claim.[4]

### III. Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. We dismiss Catlett's claims against the defendants for money damages in their official capacities only, and let stand his

---

3. See Cliff v. Board of Sch. Comm'rs of City of Indianapolis, 42 F.3d 403, 413–14 (7th Cir.1994) (citing Suckle v. Madison Gen. Hosp., 499 F.2d 1364, 1367 (7th Cir.1974) (employee "cannot sue in federal court to secure a right which he declined when it was voluntarily offered to him")).

4. Again, if discovery reveals that Catlett and all other union members are given a choice between the union grievance procedure and a more thorough hearing, it is possible that his equal protection claim will be waived. However, the plaintiff's complaint makes no reference to such an option, so we decline to consider a waiver argument at this time.

claims against them for damages in their individual capacities and for injunctive relief in their official capacities. It is so ordered.