**Gus CHANDLER, Plaintiff,**

v.

**BOARD OF EDUCATION OF THE CITY OF CHICAGO, etc., et al., Defendants.**

**No. 99 C 3550.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 28, 2000.

Gregory Nathan Freerksen, Marla J. Haley, Witwer, Poltrock & Giampietro, Chicago, IL, for plaintiff.

Rohit Sahgal, Paul A. Patten, Marilyn F. Johnson, Chicago School Reform Bd. of Trustees, Chicago, IL, for defendants.

*MEMORANDUM AND ORDER*

MORAN, Senior District Judge.

Plaintiff Gus Chandler brings this action against the Board of Education of the City of Chicago [1] (the Board), individual mem-

1. Now named the Chicago School Reform    Board of Trustees.

bers of the Board, and individual officers of the Chicago public schools (collectively "defendants"), alleging that he was wrongfully terminated from his teaching position. Defendants have moved to dismiss part of the complaint for failure to state a claim. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

We begin with some necessary background regarding the Illinois School Code. Under Illinois law a Chicago public school teacher acquires tenure status upon completing three years of satisfactory service. Traditionally, a tenured teacher may be removed only for cause and only after receiving due process notice and an opportunity to be heard. *See* 105 ILCS 5/34–84 and 34–85. The Illinois General Assembly enacted extensive reforms in the school code in 1995, some of which affected the rights of teachers. *See generally* Illinois Public Act 89–15, eff. May 30, 1995. One result of the 1995 reforms was the addition of § 34–18(31) to the Illinois School Code, which grants the Board the power to "promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion." 105 ILCS 5/34–18(31).

Exercising this power, the Board promulgated Policy No. 97–0723–P02 (the Policy), which set the rules pursuant to which the Board could lay off tenured teachers. Section 1 of the Policy enumerates the reasons that may justify a layoff:

> Whenever an attendance center or a program is closed, there is a drop in enrollment, the educational focus of the attendance center is changed such that

available teaching positions cannot accommodate some or all current regularly certified and appointed teaching staff, or when an attendance center is subject to actions taken as a result of remediation, probation, reconstitution or educational crisis, such staff will be reassigned or laid off in accordance with this policy.

The Policy further requires that affected teachers be provided notice of any adverse action and placed initially into a category of reassigned teachers. The Board must provide reassigned teachers with information regarding vacancies within the school system and opportunities to interview for those vacancies. If the teacher is unable to secure permanent appointment within ten months after initial notice, the Policy provides that the teacher will be honorably terminated from service.

In 1973, plaintiff was appointed a physical education teacher at Manley High School.[2] Pursuant to § 34–84 of the Illinois School Code he achieved tenure status in 1976. Plaintiff continued to work as a physical education teacher at Manley High School for the next twenty-two years. On August 20, 1998, plaintiff learned that his position had been eliminated. Although the Board did not provide plaintiff with an explanation for its actions, it placed him in a category of reassigned teachers, as provided by the Policy. Despite his efforts, plaintiff has been unable to secure another teaching job in the Chicago public schools and he states that his termination is imminent.[3]

Plaintiff filed suit against the Board in state court on April 3, 1999; his complaint was removed to federal court on May 27, 1999. In his complaint, plaintiff claims that the Board's decision to terminate him was unlawful for a variety of reasons. He alleges in Counts I and II, which respectively seek an injunction and a declaratory

---

**2.** On a motion to dismiss we take plaintiff's well-pleaded factual allegations as true and construe them in his favor. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992).

**3.** Plaintiff brought this action prior to the expiration of the ten-month period provided under the Policy. According to the complaint, plaintiff was scheduled to be terminated in August 1999.

judgment, that § 34–18(31) and the Policy are invalid in that they abrogate the teacher tenure rights provided by §§ 34–84 and 34–85. Alternatively, plaintiff alleges that he was not terminated pursuant to one of the reasons enumerated in the Policy, and therefore he has been deprived of his tenured job without constitutionally-required procedural protections. In Counts III, IV and V, plaintiff alleges age and race discrimination and seeks monetary damages and related relief.[4]

Defendants move to dismiss part of the complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). Defendants seek to dismiss Counts I and II in their entirety and further seek dismissal of the individual defendants from all five counts alleged in this lawsuit. We address both parts of defendants' motion below.

## DISCUSSION

### I. Counts I and II

In Counts I and II of the complaint plaintiff alleges that § 34–18(31) and the Policy unconstitutionally infringe upon his tenure rights provided by §§ 34–84 and 34–85. Defendants move to dismiss Counts I and II on the grounds that § 34–18(31) and the Policy are statutorily sound and constitutionally permissible provisions. Defendants rely on an opinion recently issued by Judge Zagel which upheld the validity of § 34–18(31) and the Policy in the face of a similar challenge by Chicago Public School teachers. *Shegog v. Bd. of Educ. of City of Chicago,* No. 99 C 0211, slip op. (N.D.Ill. Feb. 17, 1999). Even more recently, however, the Seventh Circuit issued its opinion on appeal in *Shegog* and provided specific instructions that affect our disposition of Counts I and II. *Shegog v. Bd. of Educ. of City of Chicago,* 194 F.3d 836 (7th Cir.1999).[5] We briefly discuss the *Shegog* litigation as it bears directly on defendants' motion.

In *Shegog,* a group of teachers laid off under the Policy brought suit alleging that the Board had violated the teachers' statutorily-conferred tenure rights without due process of law. After extensive briefing and an evaluation of the language, purpose, and history of the relevant statutes, Judge Zagel upheld the validity of § 34–18(31) and the Policy. Citing *Pittman v. Chicago Bd. of Educ.,* 64 F.3d 1098, 1104 (7th Cir.1995), *cert. denied,* 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996), Judge Zagel observed that tenure was a property right created by the Illinois General Assembly and therefore could be changed or eliminated by the General Assembly without infringing on the teachers' due process rights. Judge Zagel held that the General Assembly, by enacting § 34–18(31), had granted the Board the power to promulgate rules laying off employees, including teachers tenured under §§ 34–84 and 34–85, and that the Board did not exceed its statutory authority in promulgating the Policy. Having held that § 34–18(31) and the Policy were valid and did not offend due process, Judge Zagel denied the teachers' motion for a preliminary injunction.

On appeal, the Seventh Circuit affirmed Judge Zagel's decision not to issue a preliminary injunction, but held that the main issue of whether § 34–18(31) and the Policy are valid is best left for the state courts to decide. The Seventh Circuit opined that the validity issue did not in fact implicate due process rights and therefore did not raise a federal question; instead, the validity issue was purely a matter of state statutory law and thus fell within the expertise of state judges. *Shegog,* 194 F.3d at 837–38. Setting aside the validity issue,

---

4. Plaintiff is a 66 year-old white male. He alleges that the Board terminated his position but retained a younger, non-tenured, African-American physical education teacher at Manley High School. He further alleges on information and belief that all of the teaching vacancies he applied for after being terminated from Manley High School were eventually filled by African–Americans who were younger than himself.

5. The Seventh Circuit issued its opinion after briefing on defendants' motion had been completed.

the Seventh Circuit found that *Shegog* presented only one federal question: whether § 34–18(31) or the Policy create a property interest within the meaning of due process and, if so, what procedural protections are necessary to protect that property interest. *Id.* at 838–39. The Seventh Circuit remanded the case with instructions to address that narrow federal question, and to reserve the main state law issue regarding the validity of § 34–18(31) and the Policy for the state courts. *Id.* at 839–40.

These instructions are relevant here. In resolving defendants' motion to dismiss we will not address the arguments regarding the validity of the § 34–18(31) and the Policy, even though those issues comprise the heart of Counts I and II. We also may be able to avoid the issue remanded to the district court in *Shegog,* for plaintiff raises additional arguments that may bring this case outside the Policy altogether. Plaintiff claims that the Board cannot show, as a matter of law, that his position at Manley High School was terminated for one of the reasons enumerated under the Policy. Therefore, plaintiff asserts that his termination did not fall under the Policy's purported aegis from due process requirements, but rather stripped him of his tenure rights without constitutionally-required procedural protections.[6]

In support of this argument plaintiff first points to the fact that the Board has never provided him with a reason why his position was eliminated. This is significant. Section 3 of the Policy provides that "[w]hen a determination is made that a teacher's services are no longer required at an attendance center or in a program for the reasons described in Section 1 above, the teacher will be so notified." It would take very little effort on the part of the Board to comply with this requirement. While a minimal amount of discovery will uncover the Board's reason for terminating plaintiff, at this stage we have no evidence that the Board notified plaintiff that his position was eliminated for one of the reasons enumerated in the Policy.

Plaintiff posits that he may have been terminated because of an unlawful reduction in Manley High School's physical education requirements.[7] The Board seizes on plaintiff's supposition, arguing that the reduction in physical education requirements was part of a change in educational focus at Manley High School and therefore authorized under the Policy. While discovery may prove that to be so, we need more than the bald assertion made in the Board's brief. The Policy requires that the Board provide an affected teacher notice describing the reasons for the termination at the time of termination, not later upon the onset of litigation. A teacher should not be left to hypothesize about why he was terminated.

If plaintiff was reassigned because of a change in educational focus or some other

---

**6.** Judge Zagel noted that this alternative argument was not yet at issue in the *Shegog* litigation:

Plaintiffs briefly allege in their complaint that certain teachers lost their positions not for one of the reasons listed in the Board's layoff policy, but because they were absent due to sickness, maternity leave, or an approved sabbatical. If those allegations prove true, the plaintiffs may have some success on the merits. However, plaintiffs have not pressed these facts in their briefs, and the bare allegation is not enough to warrant granting an injunction at this time. *Shegog,* No. 99 C 0211, slip op. at 2 n. 1. In his brief plaintiff expressly argues that his case falls within the factual scenario described by Judge Zagel (Brief at 5).

**7.** Plaintiff relies on *Chicago Teachers Union, Local 1 v. Bd. of Educ. of City of Chicago,* No. 97 CH 10039 (Cir. Ct. of Cook Cty. May 24, 1999), which restricted to some extent a school's ability to waive its physical education requirements. After briefing on defendants' motion had been completed, however, the Illinois Supreme Court reversed the Circuit Court's order on appeal. *Chicago Teachers Union, Local 1 v. Bd. of Educ. of City of Chicago,* 2000 WL 46040 (Ill. Jan.21, 2000). Furthermore, as defendants point out in their brief, the physical education reductions at Manley High School may have been lawfully accomplished under school code provisions unaffected by the *Chicago Teachers Union* case.

reason listed in the Policy, the Board is required to notify plaintiff of that justification. In this case it appears that the Board did not supply plaintiff with any explanation of its motives when it decided to terminate him. We are left to guess from many possible reasons, some listed in the Policy and some not. Indeed, allegations contained in the complaint suggest the possibility that Manley High School did not reduce its physical education classes in the first place.[8] Furthermore, as alleged in the complaint, plaintiff's age or race may have played a role in his termination.[9] On a motion to dismiss we are to construe all factual allegations in favor of the plaintiff. *See Dawson,* 977 F.2d at 372. At this stage, and on these facts, we cannot hold as a matter of law that plaintiff was terminated under the Policy.[10] Therefore, we deny defendants' motion to dismiss Counts I and II of the complaint.

## II. *Individual Defendants*

■ The Board is not the only defendant in this lawsuit. Five individual members of the Chicago School Reform Board of Trustees [11] and three individual officers of the Chicago Public Schools [12] also are named as defendants. Plaintiff sues these individual defendants in both their personal and official capacities. Plaintiff's official-capacity lawsuit against the individual Trustees and Officers merely restates his action against the Board. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (suing government

officials in their official capacity "represents only another way of pleading an action against an entity of which an officer is an agent"). The official capacity lawsuit against the Trustees and Officers is redundant and therefore is dismissed. *See Jungels v. Pierce,* 825 F.2d 1127, 1129 (7th Cir.1987); *Berlanga v. Chicago School Reform Bd. of Trustees,* 1997 WL 754157, *2 (N.D.Ill. Nov. 20, 1997); *Newton v. Chicago School Reform Bd. of Trustees,* 1997 WL 159115, *4 (N.D.Ill. Mar. 18, 1997); *Admiral Theatre v. City of Chicago,* 832 F.Supp. 1195, 1200 (N.D.Ill.1993).

■ Turning to plaintiff's personal capacity lawsuit against the individual Trustees and Officers, Seventh Circuit precedent requires dismissal of those claims as well unless the complaint states allegations that the Trustees and Officers "act[ed] or fail[ed] to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occur[ed] at [their] direction or with [their] knowledge and consent." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (*quoting Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982)). In this case plaintiff claims that the Board deprived him of his property rights without due process by terminating his teaching position. These allegations, though minimal, are enough at this stage to maintain a personal capacity lawsuit against the five individual Trustees as they are members of the Board. *See Catlett v. Peters,* 32 F.Supp.2d 1010, 1012 (N.D.Ill.1998). The complaint is bereft of

**8.** Plaintiff alleges that a younger, non-tenured, African–American teacher who had previously served only as a substitute has been retained by Manley High School "to perform the work which was formerly done by Plaintiff (i.e. teach physical education to high school students at Manley High School)"(Cplt.¶¶ 24, 72).

**9.** Counts III, IV and V allege age and race discrimination. The Board has not challenged these causes of action in its motion to dismiss.

**10.** We understand that discovery may well reveal that plaintiff was laid off because of a

change in Manley High School's educational focus. If so, we will at that time take up the issue whether § 34–18(31) and the Policy create property rights and the nature of any concomitant due process protections owed to plaintiff.

**11.** They are Gery J. Chico, Norman Bohins, Tariq Butt, Avis LaVelle and Gene Saffold, referred to collectively herein as Trustees.

**12.** They are Paul G. Vallas, Cozette M. Buckney, and Carlos Ponce, referred to collectively herein as Officers.

any allegations against the individual Officers, however, and the personal capacity claim with respect to those three defendants must be dismissed. *See Berlanga,* 1997 WL 754157, at *2; *Newton,* 1997 WL 159115, at *4.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss Counts I and II of the complaint is denied. With respect to the individual Trustees, we grant defendants' motion to dismiss the official capacity claims against them but deny the motion to dismiss the personal capacity claims. The individual Officers are dismissed from this case.