In the
# United States Court of Appeals
## For the Seventh Circuit

No. 17-2665

KATRINA WALKER,

*Plaintiff-Appellant,*

*v.*

CARL WEATHERSPOON, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 8571 — **Andrea R. Wood**, *Judge.*

ARGUED APRIL 24, 2018 — DECIDED AUGUST 13, 2018

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge*. On March 31, 2016, when this suit was three and a half years old, the district court entered an order granting summary judgment to defendants "[f]or the reasons stated in the Memorandum Opinion and Order to follow". More than 16 months passed before the judge released her opinion, 2017 U.S. Dist. LEXIS 129182 (N.D. Ill. Aug. 15, 2017), and plaintiff appealed that day. A judgment under Fed. R. Civ. P. 58 was entered on August 16.

This appeal came many months too late under Fed. R. App. P. 4(a)(7)(A)(ii), which says that a judgment is deemed to be entered on the *earlier* of the Rule 58 judgment or 150 days after a dispositive order is entered on the civil docket. Until Rule 4(a)(7)(A)(ii) was adopted in 2002 the losing side always could wait for the entry of the formal judgment. See *United States v. Indrelunas*, 411 U.S. 216 (1973); *Carter v. Hodge*, 726 F.3d 917, 919–20 (7th Cir. 2013). The new rule supersedes *Indrelunas* by deeming the judgment to have been entered 150 days after a dispositive order that does not amount to a proper judgment.

A district judge who announces a final decision yet postpones issuing the opinion sets a trap for the losing side, because a plan to provide an explanation does not delay the date of decision. See *United States v. Bradley*, 882 F.3d 390, 394 (2d Cir. 2018). Most litigants who represent themselves, and many lawyers, are unaware of Rule 4(a)(7)(A)(ii) and think that they can wait for the entry of judgment. Litigants can protect themselves—for example, the loser may file a notice of appeal and ask the court of appeals to defer briefing until the district court has released its opinion. But judges should not expose litigants to the risk that they will miss the need for self-protective steps. See, e.g., *Otis v. Chicago*, 29 F.3d 1159, 1163, 1167–68 (7th Cir. 1994) (en banc). Except when there is a need for speedy announcement of the outcome, the opinion should accompany the decision. This is not a suit in which rapid decision was essential, so a deferred opinion was unjustified. And when there *is* a justification for announcing a decision in advance of an opinion, issuing the opinion should be the district judge's top priority. Deferring the opinion until after the time allowed by Rule

4(a)(7)(A)(ii) is never appropriate, as it can spell disaster for a litigant not versed in the appellate rules.

As it happens, however, this appeal has been saved by the fact that until recently *everyone* missed the significance of Rule 4(a)(7)(A)(ii).

The only jurisdictional requirement is the need for an appeal within 30 days of the judgment or an extension. See 28 U.S.C. §2107; *Bowles v. Russell*, 551 U.S. 205 (2007). *Hamer v. Neighborhood Housing Services of Chicago*, 138 S. Ct. 13 (2017), tells us that supplemental or implementing provisions in the Rules of Appellate Procedure are not jurisdictional. *Hamer* concerned Rule 4(a)(5)(C); its holding applies equally to Rule 4(a)(7)(A)(ii).

Although the Rules of Appellate Procedure are not jurisdictional, they remain mandatory. We must apply them if properly invoked. The "properly invoked" qualifier is important, for a litigant may waive or forfeit the benefit of these rules. We held on remand in *Hamer* that the appellees waived the benefit of Rule 4(a)(5)(C) by representing in their docketing statement that the appeal was timely. *Hamer v. Neighborhood Housing Services of Chicago*, No. 15-3764 (7th Cir. July 30, 2018), slip op. 4–8. Appellees in this case did not do that, but they came close—close enough to forfeit their rights under Rule 4(a)(7)(A)(ii).

The jurisdictional section of appellees' brief in this court says (some citations omitted):

> On March 31, 2016, the district court issued a minute order granting defendants' motion for summary judgment on all of Walker's claims. On August 15, 2017, the district court issued its memorandum opinion and order setting forth the reasons for its grant of summary judgment in defendants' favor. On the same

day, Walker filed her notice of appeal. The judgment was en-
tered on August 16, 2017. A premature notice of appeal is treated
as filed on the date the judgment is entered. Fed. R. App. P.
4(a)(2). This court has jurisdiction over this appeal from the final
decision of the district court disposing of all claims against all
parties under 28 U.S.C. § 1291.

By treating the appeal as early rather than late, appellees re-
linquished the benefit of Rule 4(a)(7)(A)(ii).

After the appellees filed their brief, this court alerted the
parties to a problem with the appeal's timing. Once we did
so, appellees filed a supplemental jurisdictional statement
asserting that the appeal is late. And so it is—but because,
under *Hamer*, the benefit of Rule 4 may be waived or forfeit-
ed, appellees' belated invocation of the Rule is unavailing.
*Indrelunas* shows that the appeal is jurisdictionally timely,
and no more is needed when the litigants do not notice other
problems until after the briefs have been filed.

Enforcing waivers and forfeitures gives litigants incen-
tives to explore issues themselves rather than wait for the
court to do the work. It is best to have defects detected in
time to dismiss the appeal without the need for briefs and
argument. Because no one paid attention to Rule
4(a)(7)(A)(ii) until the briefs had been filed and argument
scheduled, it was too late to save time and effort; instead the
appellees' belated invocation of Rule 4(a)(7)(A)(ii) just com-
plicated the appeal.

This brings us to the merits. Police arrived at Katrina
Walker's house with a warrant authorizing them to search
for heroin and "T," a drug dealer. The warrant was support-
ed by information from "J. Doe," a drug user whose source
was T (who Doe knew by sight and street name rather than

full name). Doe told police that for the previous six months she regularly bought heroin from T in the living room of a house, which she knew by sight rather than street address. She identified the house while driving with the police. Police prepared an application for a search warrant and took Doe with them when presenting the application to a state judge. After placing Doe under oath, the judge asked her several questions, believed Doe's answers, and issued the warrant.

Executing the warrant, officers found Walker but not T. The house was a mess; one officer attested (without contradiction) that it had the appearance of a place from which drugs were sold. Walker told the officers that she had a gun but could not remember where it was. The search for this gun, drugs, and evidence that T did (or didn't) live in the house took between 90 minutes and 2 hours. The officers left without drugs or evidence of T's whereabouts, and Walker then filed this suit under 42 U.S.C. §1983. She contends that the warrant was not supported by probable cause and that the search was executed unreasonably because the officers should have seen quickly that this was not T's house.

Walker's goal in this litigation is to have a jury make a *de novo* decision about whether the state judge should have issued the warrant—that is to say, an independent decision about probable cause, putting to one side the state judge's decision. But that's not what federal law provides. Instead the decision of the judge who issued the warrant receives "great deference". *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *United States v. McIntire*, 516 F.3d 576, 577–79 (7th Cir. 2008). With the benefit of "great deference" the state judge's probable-cause evaluation must prevail.

According to Walker the state judge was not entitled to rely on Doe, a first-time informant whose information had not been corroborated by the police. Walker proceeds as if Doe were an anonymous tipster, and, if she had been, then corroboration would have been essential. *Florida v. J.L.*, 529 U.S. 266 (2000). But Doe was not anonymous; we use a pseudonym to protect her from retaliation, not because her identity was unknown to the police. They knew her name and background (she had an arrest record but not a conviction); they met with Doe and her father, and Doe said that she wanted to break her drug habit, a good reason for turning in her supplier. Doe testified in person before the judge who issued the warrant and by doing this exposed herself to as much as three years in prison if she was lying. 720 ILCS 5/26-1; 730 ILCS 5/5-4.5-45. The reports of known, accountable persons who claim to be victims of or participants in crime (Doe was both) may establish probable cause without corroboration; the police may leave to the judicial process the sorting of truth from fiction. See, e.g., *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437–40 (7th Cir. 1986); *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009); *Matthews v. East St. Louis*, 675 F.3d 703, 706–07 (7th Cir. 2012). The state judge could have told the police that they needed to do more investigation; by issuing the warrant instead, the judge entitled the police to search without the risk of personal liability.

Walker faults the warrant-application process for withholding from the state judge the lack of corroboration. Yet neither Doe nor the officer who signed the application for the warrant stated that Doe's information had been corroborated; a reasonable judicial officer thus would have inferred that it had not been. Nothing was concealed from the

judge—nor does it matter exactly when Doe pointed to the house in which, she said, she had bought heroin (another topic on which Walker faults the affidavit seeking the warrant).

As for Walker's contention that the police should have left the house as soon as they discovered T's absence: What sense would that make? Drug dealers do not stay in their distribution points 24 hours a day. The police arrived at a disordered house that looked like a drug-distribution point. Walker admitted having a gun. It took a while for the officers to sort through the debris, locate the gun, search for drugs, and determine whether T lived in or used the house. It cannot be called unreasonable to take two hours to accomplish these things.

AFFIRMED