In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3072

ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INCORPORATED,

*Plaintiff-Appellant*,

*v.*

AMERICAN BOARD OF MEDICAL SPECIALTIES,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-02705 — **Martha M. Pacold**, *Judge*.

ARGUED SEPTEMBER 15, 2021 — DECIDED OCTOBER 8, 2021

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In *Bell Atlantic Corp. v. Twombly*, the Supreme Court considered whether a complaint alleging a violation of § 1 of the Sherman Act "can survive a motion to dismiss when it alleges that major telecommunications providers engaged in certain parallel conduct unfavorable to competition, absent some factual context suggesting agreement, as distinct from identical, independent action." 550 U.S. 544,

548–49 (2007). The Court held that such a complaint "must be dismissed" for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Swap major telecommunications providers for hospitals, insurers, and the American Board of Medical Specialties, add an accompanying state-law deceptive trade practices claim, and you get this case. The Association of American Physicians & Surgeons has alleged that the Board orchestrated a nationwide conspiracy to restrain trade in the market for medical care. But its complaint comes nowhere close to stating a claim under the standard announced in *Twombly*. The district court was right to dismiss the case.

## I

The Association of American Physicians & Surgeons, or AAPS, is a nonprofit membership organization of physicians and surgeons. The American Board of Medical Specialties, which we call the Board, is a nonprofit provider of medical certification services and itself an umbrella organization for 24 member boards, each dedicated to a particular medical practice area. The Board deems physicians who meet its requirements to be "Board certified."

Board certification is not a one-and-done process. To remain certified, physicians must comply with the Board's Maintenance of Certification (or MOC) program and the annual continuing-education requirements that come with it. According to AAPS, the MOC program does not measurably improve the quality of medical care and instead results in unnecessary expenditures of time and money for physicians. All else equal, AAPS says, its member physicians would not participate in the program.

But AAPS insists all else is not equal. True, all states permit physicians who choose not to become (or remain) Board certified to practice medicine. But according to AAPS's complaint, the Board has conspired with hospitals and health insurers nationwide to condition the granting of staff privileges and in-network status on physicians' continued participation in the MOC program. As a practical matter, AAPS says, physicians find themselves forced to participate in the program to practice medicine, at least if they wish to do so in hospitals or to accept certain forms of insurance.

## A

AAPS claims this alleged arrangement violates the Sherman Act. Its initial complaint focused on the market for medical care in hospitals. Invoking § 1 of the Sherman Act, AAPS alleged that the Board had agreed with its member boards and with a standard-setting organization called the Joint Commission to make participation in the MOC program a requirement for hospital staff privileges. AAPS paired this § 1 claim with one for negligent misrepresentation under state law, claiming that a host of statements on the Board's website "create the false impression that [the MOC program] is indicative of the medical skills of physicians" and that physicians who do not participate in the MOC program "are likely to be less competent."

The district court granted the Board's motion to dismiss, explaining that AAPS had not stated a plausible claim under either theory of liability. The district court then afforded AAPS a chance to cure the pleading deficiency in an amended complaint with additional factual allegations.

AAPS's next attempt saw the alleged § 1 conspiracy grow vaster but not any clearer. This time around, AAPS contended that the Board had conspired individually with perhaps as many as 80% of hospitals across the country to force doctors to participate in the MOC program. The new complaint also brought insurers into the fold, claiming that the Board had conspired with an unspecified number of health insurers to impose an MOC participation requirement for in-network status. And AAPS expanded the alleged conspiracy's scope. While its first complaint focused only on hospital care, the amended complaint appeared to define the relevant market to encompass almost *all* medical care nationwide.

On the state-law front, AAPS repackaged its negligent misrepresentation claim as one for deceptive trade practices under 815 ILCS § 510/2(a). This new theory centered on two statements the Board makes on its website, which allows users to search physicians' names to see whether they are Board certified. First, AAPS alleged, the use of the word "Board" misleads by implying "some authority akin to an official state medical board." Second, AAPS claimed that the Board's stating on its website that particular physicians are "Not Meeting MOC Requirements" falsely conveys that nonparticipating physicians are less competent. These statements, as AAPS views them, violate Illinois law by disparaging the quality of medical care provided by physicians who do not participate in the MOC program.

The Board again moved to dismiss.

B

The case was transferred to a new district judge, and once again the district court dismissed AAPS's complaint. Pleading

a violation of § 1 of the Sherman Act, the district court explained, requires a plaintiff to allege that the defendant (1) entered into an agreement that (2) unreasonably restrains trade in the relevant market and (3) caused the plaintiff an antitrust injury. See *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). Without addressing the third prong, the district court determined that AAPS's amended allegations fell well short of satisfying the first two.

As to the agreement element, the district court concluded that AAPS's claims that the Board had conspired with insurers and hospitals nationwide to require physician participation in the MOC program pointed only to parallel conduct. AAPS, the district court emphasized, pleaded no facts giving rise to a plausible inference of "a nationwide agreement between [the Board] and an untold number of hospitals and health insurers." From there the district court determined that AAPS had not plausibly alleged either of its two proffered restraints—unlawful tying arrangements and unlawful agreements to require participation in the MOC program—under either the *per se* or rule-of-reason frameworks of antitrust analysis. Plain and simple, the district court found AAPS's allegations to be conclusory and without factual support.

Turning to AAPS's state-law claims, the district court determined that the Board's use of the word "Board" and the phrase "Not Meeting MOC Requirements" were not plausibly false or misleading as required by the Illinois Uniform Deceptive Trade Practices Act. The district court concluded that these statements could not reasonably deceive consumers. In the end, then, the district court dismissed both counts of AAPS's complaint with prejudice.

AAPS now appeals.

## II

### A

We can make quick work of AAPS's state-law claims. Illinois law makes actionable a "false or misleading representation of fact" that "disparages the goods, services, or business of another." 815 ILCS § 510/2(a)(8). The Board's use of the term "Board" to describe *itself* cannot disparage the business of *another*. And its use of the phrase "Not Meeting MOC Requirements" to describe nonparticipating physicians is literally true, so it can only be the basis for liability if in context it is likely to deceive or mislead consumers. See *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). AAPS's complaint contains no such well-pleaded allegations. The claims require no further analysis.

AAPS's § 1 claim under the Sherman Act fares no better. Foremost, the amended complaint does not plausibly allege an agreement between the Board, hospitals, and insurers. Mere legal conclusions, the Supreme Court has underscored, are "not entitled to be assumed true" at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Yet, having taken our own careful look at AAPS's amended complaint, all we see are conclusory allegations—that the Board "agreed," "conspired," "colluded," or "induced" agreement, conspiracy, or collusion. Repetition cannot substitute for factual allegations. Once we filter out AAPS's legal conclusions, not nearly enough is left on the factual front for the amended complaint to survive dismissal.

To be sure, in no way do we question AAPS's belief that the Board's MOC program is detrimental to the overall delivery and quality of healthcare across the nation. But that

debate is not for us to resolve. Our role is limited to an answer we can supply with confidence: AAPS's amended complaint fails to state a § 1 claim. It does no more than point to "an allegation of parallel conduct and a bare assertion of conspiracy." *Twombly*, 550 U.S. at 556. The district court had no choice but to dismiss the case a second time.

In some ways, it seems AAPS knows this to be true. At oral argument, AAPS's counsel expressed dismay that "28 times in the decision the trial judge use[d] the word 'plausible,' or 'plausibly,' or 'implausible'—some variation—28 times without allowing any discovery." But AAPS surely knows that the district court's focus on the plausibility of the alleged § 1 violation reflected close and careful adherence to the Supreme Court's instruction in *Twombly* requiring a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Right to it, *Twombly* bars the discover-first, plead-later approach that AAPS urges us to adopt. For good reason: modern antitrust litigation is expensive. Only by requiring plaintiffs to plead facts plausibly suggesting conspiracy can we "avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support a § 1 claim." *Id.* at 559 (cleaned up). This is just such a case.

The Board contends that AAPS's disregard of the *Twombly* standard warrants sanctions under Federal Rule of Appellate Procedure 38. The Board is half right—this appeal is frivolous. But the Board sought fees only by requesting them in its appellate brief rather than complying with Rule 38 by filing a separate motion—a requirement we strictly enforce and have

underscored on many prior occasions. See, e.g., *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 671 (7th Cir. 2012).

AAPS should make no mistake, though. *Twombly* is the law. And under *Twombly*, a plaintiff's pleading burden "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. We expect much more than we saw from AAPS in this appeal.

B

This case has been around a long time—since 2013—and AAPS now urges us to extend it once again. It wants another chance to amend its complaint, and it says the district court abused its discretion by dismissing the amended complaint with prejudice. See *Jauquet v. Green Bay Area Catholic Education, Inc.*, 996 F.3d 802, 807 (7th Cir. 2021). It is true that Federal Rule of Civil Procedure 15(a) takes a "liberal approach to granting leave to amend." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018). But AAPS has already had one opportunity to amend its complaint—to no avail. And "[n]othing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects." *Id.* AAPS never asked the district court for permission to amend a second time, and its arguments on appeal all but concede that, without the benefit of discovery, another amendment would be futile. Nearly eight years after AAPS filed its initial complaint, the district court was right to put an end to this case.

This case's long stay on the federal docket leads us to a final observation. Our review of the proceedings in the district

court shows that the Board moved to dismiss AAPS's initial complaint in May of 2014. The original district judge granted that motion, but not until September 30, 2017—more than three years later—and then only for "the reasons stated in the Memorandum Opinion to follow." That opinion did not follow until December 13, 2017.

We have condemned this practice in the past and do so again today. This approach may have the benefit of ticking a case off a list of outstanding motions, but it risks catastrophe for litigants. Under Federal Rule of Appellate Procedure 4(a)(7)(A)(ii), judgment is deemed to be entered "on the *earlier* of the Rule 58 judgment or 150 days after a dispositive order is entered on the civil docket." *Walker v. Weatherspoon*, 900 F.3d 354, 356 (2018) (emphasis in original). Those 150 days start running when the district court actually dismisses the case—here, September 30—not when it later issues its reasoned opinion. If the opinion does not follow for more than 180 days—150 days plus the ordinary 30 days for an appeal—the appeal may be barred, "spell[ing] disaster for a litigant not versed in the appellate rules." *Id.* The delay here was 75 days, so no such disaster ensued. But we reaffirm what we emphasized in *Walker*: unless extenuating circumstances require the "speedy announcement of the outcome, the opinion should accompany the decision." *Id.*

                                                    AFFIRMED