NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-909

COMMONWEALTH

vs.

DESMOND TAHATDIL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After being convicted of murder in the second degree, the defendant moved for a new trial, claiming that the Model Jury Instructions on self-defense violated his rights under the Second Amendment to the United States Constitution.  He further claimed that the prosecutor misstated the law on self-defense in her closing argument and that the failure of defense counsel to object constituted ineffective assistance.  A Superior Court judge, who was also the trial judge, denied the motion, and the defendant appeals.  We affirm.

Background.  The facts giving rise to the defendant's conviction are set out in the unpublished memorandum and order resolving his direct appeal, see Commonwealth v. Tahatdil, 101

Mass. App. Ct. 1111 (2022), and we do not repeat them in detail here.  In summary, the defendant fatally stabbed his adult son, Brendon,[1] while they were living together in a basement apartment.  The Commonwealth presented evidence that the defendant and Brendon had arguments on multiple occasions in the weeks before Brendon's death.  The Commonwealth's theory was that, on the day of the stabbing, the defendant became enraged by Brendon's conduct, went upstairs and retrieved a paring knife, then came back downstairs and stabbed Brendon several times, killing him with a stab wound to the chest.

The defendant's theory was that he acted in self-defense and that Brendon was the aggressor.  Specifically, he claimed that Brendon charged at him while holding a bread knife, causing the defendant to raise a paring knife.  When Brendon charged at the defendant a second time, he impaled himself on the paring knife as he approached.  Brendon then tried to strangle the defendant, sustaining further injuries when the defendant swung the paring knife at him.

The trial judge instructed the jury on murder in the first degree, murder in the second degree, and self-defense, as well as voluntary manslaughter based on excessive use of force in

---

[1] Because the defendant and the victim share the same last name, we refer to the victim by his first name.

self-defense and heat of passion induced by sudden combat.  The jury convicted the defendant of murder in the second degree.

Discussion.  A judge "may grant a new trial at any time if it appears that justice may not have been done."  Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  We review a judge's denial of a motion for a new trial "to determine whether there has been an abuse of discretion or other error of law."  Commonwealth v. Wheeler, 52 Mass. App. Ct. 631, 635 (2001).  Where, like here, the motion judge was also the trial judge, we grant special deference to the judge's decision.  See Commonwealth v. Vo, 427 Mass. 464, 467 (1998).  "The judge's disposition of the new trial motion will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error."  Id.

1.  Model jury instruction.  The trial judge instructed the jury, in accordance with the Supreme Judicial Court's Model Jury Instructions, that the Commonwealth had the burden of proving that the defendant did not act in proper self-defense and that it could meet its burden in several ways including, as relevant here, by showing that "the defendant did not use or attempt to use all proper and reasonable means under the circumstances to avoid physical combat before resorting to the use of deadly force."  The defendant argues that this instruction violated the Second Amendment, which he says guarantees the right to use arms

3

for "immediate self-defense" in one's home regardless of whether safe retreat is possible.  The defendant takes the phrase "immediate self-defense" from District of Columbia v. Heller, 554 U.S. 570, 635 (2008), which struck down a law that required any firearm in the home be disassembled or bound by a trigger lock at all times, rendering the firearm inoperable.  See id. at 628-630.  The defendant maintains that the instruction here is likewise unconstitutional because it "prohibits one from bearing arms for the purpose of immediate self-defense."[2]  We are unpersuaded.

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  In determining whether the jury instruction infringed on the defendant's Second Amendment rights, we begin by asking "whether the regulated conduct falls within the 'Second Amendment's plain text.'"  Commonwealth v. Marquis, 495 Mass. 434, 450 (2025), quoting New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S.

_____

[2] The Commonwealth argues that the defendant waived this claim by failing to raise it at trial or on direct appeal.  In response the defendant contends that the futility doctrine entitles him to harmless error review because his trial predated New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 24 (2022).  We will assume, without deciding, that the claim is not waived, but we note that both Heller, 554 U.S. 570, and McDonald v. Chicago, 561 U.S. 742 (2010), predated the defendant's 2019 trial.

4

1, 24 (2022). "This textual question depends on whether the persons subjected to the regulation at issue are members of 'the people,' whether the weapons at issue are '[a]rms,' and whether the specific conduct at issue qualifies as 'keep[ing]' or 'bear[ing]' within the meaning of the Second Amendment" (footnotes omitted). Marquis, supra at 450-451. If these prerequisites are satisfied, the conduct is "presumptively protect[ed]"; the government must then justify the regulation by showing that it is "consistent with this Nation's historical tradition of firearm regulation." Bruen, supra.

While there is no dispute that the defendant is a member of "the people," a genuine question exists as to whether the paring knife he used constitutes an "arm." Although the Supreme Judicial Court has defined "arms" to include items beyond firearms, such as spring-release pocketknives, see Commonwealth v. Canjura, 494 Mass. 508, 509 (2024), no Massachusetts appellate decision has addressed whether all bladed instruments capable of being used for self-defense, but not designed for that use, qualify as "arms." Other courts have concluded they do not. For instance, in Seattle v. Evans, 184 Wash.2d 856, 873 (2015) (en banc), cert. denied, 580 U.S. 987 (2016), the court held that a paring knife was not an "arm" because it was not "designed and commonly used for self-defense." Otherwise, the

5

court observed, "there would be no end to the extent of utensils arguably constitutionally protected as arms."  Id. at 872.

Ultimately, we do not decide the question because, even assuming that the paring knife is an "arm," we disagree with the defendant that the jury instruction infringes on specific conduct that qualifies as "'keep[ing]' or 'bear[ing]' within the meaning of the Second Amendment" (footnotes omitted).  Marquis, 495 Mass. at 450-451.  Although the defendant describes the jury instruction as prohibiting the "bearing" of arms, it does no such thing.  Rather, the defendant's attack on the instruction amounts to a claim that he had a Second Amendment right to use the knife in a particular way -- that is, to inflict deadly force in self-defense even where he could safely retreat.  As we recently observed in Commonwealth v. Howard, 106 Mass. App. Ct. 282, 287 (2025), however, "there is a serious question as to whether the Second Amendment provides any protection to how one uses" a weapon, "as opposed to protecting the possession and carrying of" one.

But we need not decide that question either because, even assuming that the Second Amendment protects some uses of weapons, our caselaw forecloses the defendant's argument that such protection extends to the use of deadly force where safe retreat is possible.  In particular, in Commonwealth v. Leoner-Aguirre, 94 Mass. App. Ct. 581, 584 (2018), we rejected a Second

6

Amendment challenge to the same jury instruction at issue here, holding that there is no "right to utilize a firearm in self-defense when it is unnecessary, for example, when one can safely retreat as required by the defense of self-defense under Massachusetts law."  We reasoned that "nothing in Heller, McDonald [v. Chicago, 561 U.S. 742 (2010)], or the Second Amendment prohibits States from abiding by the long-standing rule that deadly force, including by the use of a firearm, may be used only when actually necessary in self-defense."  Id.  See United States v. Morsette, 622 F.3d 1200, 1202 (9th Cir. 2010) (neither Heller nor McDonald "purports to change, or even to comment on, the law as to the definition of self-defense in a criminal case").

While suggesting that Leoner-Aguirre was wrongly decided, the defendant does not ask us to overrule it.  Instead, the defendant appears to argue that this case is different because it involves defense of the home and Heller held that the Second Amendment protects the use of arms in "immediate self-defense" when attacked within one's home.  Putting aside that, if that is his argument, he could have raised it at trial and on direct appeal, we do not agree with the defendant's reading of Heller. The law at issue there regulated possession of firearms, not their use.  See Calderone v. Chicago, 979 F.3d 1156, 1162 (7th Cir. 2020), quoting McDonald, 561 U.S. at 890 n.33 (Stevens, J.,

7

dissenting) ("The Second Amendment right identified in Heller is likewise clearly distinct from a right to protect oneself"); Morsette, 622 F.3d at 1202 ("neither [Heller nor McDonald] concerned the use of a weapon, as distinct from mere possession"). While the defendant heavily relies on the phrase "immediate self-defense," the Court used that phrase only once -- not to define any right to use a firearm, but to describe the effect of the restriction on possession that it found unconstitutional. See Heller, 554 U.S. at 635 ("we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense"). The Court's single use of the phrase, which relates to the possible immediate need for self-defense, does not abrogate our longstanding rule that deadly force amounts to necessary and justified self-defense only when safe retreat is not possible.

We are also unpersuaded by the defendant's suggestion that Leoner-Aguirre is no longer good law because Bruen now requires the Commonwealth to demonstrate that the jury instruction is "consistent with this Nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 24. The Commonwealth has that burden only if the Second Amendment's plain text protects the regulated conduct. See id.; Marquis, 495 Mass. at 450. Bruen

does not undermine Leoner-Aguirre's holding that the Second Amendment does not protect the use of an arm against another when it is not necessary, such as when one can safely retreat before resorting to deadly force. We therefore need not consider whether the instruction is consistent with our Nation's history and tradition.

2. Closing argument. The defendant next claims that the prosecutor's closing misstated the law of self-defense by conveying that the defendant had the duty to retreat from a verbal argument. Specifically, the defendant challenges the prosecutor's various statements pointing out occasions when the defendant could have slept upstairs or otherwise avoided Brendon, but instead chose to engage in arguments with him and refused to back down. According to the defendant, these statements improperly conveyed that he had an "expansive duty to avoid his basement apartment even before he was assaulted by Brendon." We disagree.

"Statements made during closing argument are to be reviewed 'in the context of the entire closing, the jury instructions, and the evidence introduced at trial.'" Commonwealth v. Mack, 482 Mass. 311, 322 (2019), quoting Commonwealth v. Martinez, 476 Mass. 186, 198 (2017). Here, the judge, who heard all of the evidence, concluded that the challenged portions of the closing "did not misstate the law" and indeed "did not state the law."

9

Rather, they were "purely factual arguments based on the course of conduct by [the defendant] and his son leading up to the fatal stabbing," which were relevant to the questions of the defendant's intent, motive, and state of mind.  The defendant has not shown that this was an abuse of discretion, nor has he shown a substantial risk of a miscarriage of justice given that the jury instructions correctly defined the law of self-defense. See Commonwealth v. Cuffee, 492 Mass. 25, 34 (2023).  For the same reasons, the defendant has not shown that defense counsel was ineffective for failing to object.  See Commonwealth v. Phillips, 495 Mass. 491, 498 n.4 (2025).

Order denying motion for a
  new trial affirmed.

By the Court (Rubin, Shin &
  Singh, JJ.[3]),

Clerk

Entered:  January 28, 2026.

---

[3] The panelists are listed in order of seniority.